300 So.2d 392

**Robert Joe JOHNSON**

v.

**STATE.**

**7 Div. 182.**

Court of Criminal Appeals of Alabama.

June 25, 1974.

Rehearing Denied July 16, 1974.

1. ABA Standards of Criminal Justice, Pleas of Guilty § 1.7.

2. Compare 11 F.R.Cr.P.

ON REHEARING

ALMON, Judge.

Appellant claims the trial court was in error in requiring him to select the second jury from the same capital venire. We agree.

For a complete understanding of what occurred, we quote from the record:

"COURT: Are you ready to strike?

"MR. IGOU: Yes sir.

"COURT: All right, go ahead.

"(At a point in the proceeding when the jury had been struck)

"COURT: Just a moment. A venireman who was one of the twelve that was left when his name was called to take his seat in the jury box approached the bench and stated that he was related to the wife of the accused, and that he is a neighbor, living about a half mile from the accused, and he feels that by being that close he would not be able to do justice in the case.

"MR. BLACK: We challenge him for cause, because this was not known.

"COURT: The point is, he was asked if he was related, and did not divulge that. How are you related to the defendant?

"(The response of the juror made at the bench was not heard by the reporter)

"COURT: Charlie Gillespie, who is the father-in-law of the defendant is a cousin of your mother, and you think it is a second cousin?

"JUROR: Second or third.

"COURT: The juror's name is J. W. Bohannon, and he is challenged for cause by the State and his name will be stricken from the list from which the jury in this case will be drawn, and his name is stricken and the clerk is requested to make a new list and a new jury will be struck.

"MR. BEATY: The defendant objects to the exclusion of the juror, J. W. Bohannon after the striking of the jury, in that it has not been established that the juror was related within the degree of consanguinity or affinity, and would be disqualified as a juror in this case, and that it is evident from the statement of the juror that he does not know the relationship, but he thinks that his mother and the wife of the defendant are, and that his mother and the father of the wife of the defendant are cousins, probably second or third cousins. He has not stated with certainty any degree of relationship and has established that he does not really know the degree of the relationship, and that in effect, the striking or release of this juror is the same as the selection of a blue ribbon jury to try a defendant, and further, that the State, without the establishment of the certainty of the relationship, would not be entitled to such information for information purposes until the definite establishment of the relationship, and that there was no error, or has been no error in the failure of the juror to reveal the suspected or guessed relationship.

"COURT: You wrote down the qualifying questions, didn't you?

"REPORTER: Yes sir.

"COURT: Do you have down there that nobody responded when asked if they were related, or if they had any reason that they would not render a just and a true verdict?

"REPORTER: Yes.

"COURT: And nobody responded to the questions propounded to them by the questions of the defendant?

"REPORTER: No sir.

"MR. BEATY: We object to the discharge of the juror on the further grounds that after having struck the jury from this venire, the State is put on notice as to the method of striking used by the defendant, and they would be given an undue advantage in the further selection of the jury and that the defendant would be denied his right to a fair and impartial trial by a jury.

"MR. SCOTT: And on the further grounds that the defendant has now been deprived of a fair striking from the panel of jurors from which the jury would be selected for any robbery trial of this case at this term.

"MR. BEATY: And, further, that the State has been put on notice in advance that the defendant will be willing to accept certain jurors in the trial of this case, and this is a matter that is to be held strictly within the knowledge of the defendant until the actual striking of the jury in the case, in order to obtain a fair trial, and a fair trial cannot be held.

"COURT: Now, ladies and gentlemen, you may be and you may not be eleven of the jurors that will be in the trial of this case. At 1:15 P.M., take your seat back there, the clerk will, in the meantime, prepare a new list and at that time I will qualify the jury again, the venire again, and a jury will be struck for the trial of this case, and we will be in recess until 1:15 P.M.

"(At the time when court reconvened at 1:15 P.M., February 21, 1972)

"MR. SCOTT: At this time, the defendant moves for a mistrial . . . .

. . . . . .

"MR. BEATY: The defendant objects to being placed on trial with the venire presented for striking, in that the name of J. W. Bohannon has been deleted therefrom, and as a further ground for said motion, that although the venireman thought he was related to his mother, and a cousin of the wife of the defendant, there is no proof of the relationship within the degree established by law of consanguinity or affinity, therefore, until such proof is given, the defendant is entitled to have the name of this juror on the list from which he is compelled to strike.

"MR. BLACK: Mr. Beaty, he wasn't excused on that ground.

"COURT: Mr. Bohannon, would you come up here. Mr. Bohannon, do you know of your relationship? You don't know? I asked a question, this question, do you have any knowledge of the facts in the case that would bias your verdict?

"MR. BOHANNON: Being a neighbor and everything.

"COURT: You tell me that you do not know the relationship, and do not know any facts in the case at all?

"MR. BOHANNON: I don't know the facts, I know him.

"COURT: My question is this, do you know any facts in the case that would affect your verdict?

"MR. BOHANNON: I don't know anything about the case, just what I heard about it here.

"COURT: What you have heard here is all you know?

"MR. BOHANNON: Yes, sir, that's all I know.

"MR. BLACK: I would like to ask the juror is [sic] he has been drinking?

"MR. BEATY: We object to that.

"COURT: You don't know of a kinship, or any bias.

"MR. BLACK: He knows he is related someway or another.

"COURT: Clerk, put this man's name back on the list. Now, you held up your hand on capital punishment.

"MR. BOHANNON: I just thought believing in capital punishment. I don't believe in taking anybody's life.

"COURT: Regardless of the facts or the circumstances of the evidence?

"MR. BOHANNON: No.

"COURT: And you would not vote for capital punishment regardless of how strong the case might be?

"MR. BOHANNON: I do not think I would.

"MR. BLACK: You mean you would not vote for capital punishment regardless of the facts or circumstances?

"MR. BOHANNON: I don't think.

"MR. BLACK: Do you know whether you would or not, not what you think.

"MR. BEATY: We object to his arguing with him.

"MR. BOHANNON: I don't think I would, really.

"COURT: All right, you may have a seat.

. . . . . .

"(At a point when Mr. Black was qualifying the jurors)

"MR. BLACK: Do any of you jurors know the defendant, Robert Joe Johnson? Now, Mr. Bohannon does, so tell him to hold up his hand.

"MR. BEATY: We object, Mr. Bohannon is sitting down there and holding his hand up so it can be seen. I can see it sticking up from here, and because of continuance.

"COURT: Overruled."

■ If the juror's mother was the second cousin of the defendant's father-in-law; then, according to the civil law of relationships and degrees of kindred, the juror was connected to the defendant by affinity in the eighth degree. Owen v. State, 255 Ala. 354, 51 So.2d 541. Tit. 30, § 55, Code of Alabama, 1940, recompiled 1958, requires affinity within the fifth degree before a challenge for cause should be granted.

■ The reasoning of the trial judge in ordering Juror Bohannon's name stricken from the list is not absolutely clear from the record. For it can be seen that later, in the course of selecting a jury, Juror Bohannon's name was put back on the list of veniremen. However, we need not decide whether the court acted correctly in this regard. The trial judge should have either granted the appellant's motion for a mistrial or a continuance and not have required the appellant to strike a second jury from the same capital venire.

We construe the case of Murray v. State, 210 Ala. 603, 98 So. 871, to be dispositive of this issue. In *Murray*, supra, the defendant was indicted for murder in the first degree. After the prospective jurors were qualified, the parties were supplied with an incorrect jury list from which to strike. After a jury had been struck, it was realized that the list was erroneous and included jurors who had previously been challenged for cause. The court set this jury aside and required the parties to strike a new jury from the same venire. In holding this action of the trial court to be reversible error, the court said:

"The court erred when it sustained the motion of the state to discharge this jury over objection and without consent of the defendant. The motion came too late. Authorities supra. These persons thus selected became the jury from this venire for the trial of the defendant. After they were thus selected, impaneled, and sworn, the other persons on the special venire were automatically discharged as special jurors in this case, and the other persons on the regular venire were automatically relieved of jury duty in this case. Their duties in this case had

ended. For other obvious reasons they should not be placed on the state and defendant again to select the jury. Each had shown their choice of the men on the list to each other for the trial of the defendant. Section 32, Act 1919, Gen. Acts 1919, p. 1040, and authorities supra.

"The court, after granting the motion of the solicitor to vacate, set aside, and discharge this jury, should have either continued the case or set another day of the term of court for the trial of the defendant, and ordered another and different venire facias for his trial, in accordance with the statute. The objections of the defendant to selecting another jury from the same venire facias should have been sustained by the court. This was reversible error. Section 32 of the Act in Gen. Acts 1919, p. 1040, and authorities supra."

Application for rehearing granted. Reversed and remanded.

All the judges concur except CATES, P. J., not sitting.